25 1197 Connetquot Central School District 25 1197 Connetquot Central School District   25 1197 Connetquot Central School District  25 1197 Connetquot Central School District 25 1197 Connetquot Central School District Good morning. May it please the court. I'm Cheryl Berger of the Lee Belt Law. Attorneys for the plaintiffs, Christopher Dolce, Sara Ecke, and Sinead McLeary-Powley. Your honors, by compelling the plaintiffs to remove their flag stickers and their flags, defendants violated plaintiffs' clearly established constitutional rights to be free from viewpoint discrimination and denied them of their equal protection rights. And thus, no defendant was entitled to qualified immunity. Could I ask on the speech claim, if I think Garcetti applies, how does the analysis go? Garcetti will absolutely not apply in this situation. We are not asking you to. Tell me why, and then accept that I disagree and think Garcetti applies. If Garcetti applies, do you lose? No. First, let me ask you, let me answer the first question, which is, how does Garcetti concern this case? And it doesn't. Garcetti conflates the question of whether or not the plaintiffs were engaged in First Amendment speech. On this appeal, in order to decide the issues on this appeal, this court should not even touch that question. It does not need to determine the answer to that question to determine the issues raised on this appeal. For viewpoint discrimination, denial of equal protection, discrimination, none of those concern whether or not the plaintiffs were engaged in First Amendment speech. That is why Garcetti does not apply. Just seems to me you just answered the question by assuming the answer. I mean, why isn't this government speech if it's pursuant to a teacher's official duties? It's not government speech because it's not school-sponsored speech. And we know it's not school-sponsored speech because the New York Department of Education has come out and already determined that LGB flags are neither political nor school-sponsored speech. I guess, more generally, putting displays on the classroom walls seems like would reasonably be interpreted as part of the curriculum. Not according to the New York State Department of Education, and that is exactly what the defendants are bound by. The New York Department of Education has clearly stated that flags and symbols are not only not political speech, that school districts are prohibited from removing them as political speech, and school districts are encouraged to display those symbols in order to support the education laws, anti-bullying statutes, anti-discrimination statutes, and to show that there's tolerance and that there's safety for this marginalized group of children. So the question of whether or not the speech is That makes it sound, it sort of sounds like you're saying, it is part of the official duties, but you understand New York State to require this particular kind of speech as part of one's official duties? I'm not conceding, Your Honor, this is part of one's official duties. These teachers had flags and stickers as pride. They weren't using the classroom as a pulpit to lecture. They weren't even incorporating it into their classroom curriculum. If this was a math class, if there were math displays on the walls, we would see that as part of the teacher's official duties, wouldn't we? Yeah, arguably, depending on what the math displays were, sure, one could argue that it's part of her duties. That's correct. So you're saying one looks at the content of the speech in order to determine whether it's part of his official duties? How do you do the analysis to know whether Garseveti applies or not? Because that is, Your Honor, respectfully, I disagree that that's even the analysis. Why? OK, because when you're discussing That's the question, is to decide what the analysis is. The analysis is in viewpoint discrimination, a school may not choose to suppress expression because they disagree with it. In a viewpoint discrimination claim, that claim governs how people are being treated differently versus whether or not you're acting in your official capacity. You don't get into the question of whether or not it's school-sponsored unless you're talking about the Tinker analysis and the Hazelwood analysis. And Hazelwood is not even triggered. We're talking about, in viewpoint discrimination, whether or not the content of these messages are being treated differently, and they were here. And it's important to note that these teachers never violated policy 1310. Policy 1310 says you cannot engage in political speech. The New York Department of Education has already determined this speech is not political. Therefore, 1310 is not violated. Can you go to the second part of Judge Eisen's first question, which is, if we disagree with you on this, if we think Garseveti does apply, this is government employee speech, why do you not lose? Well, the reason we don't lose here is because when the teachers had their flags and stickers displayed here, it was just a demonstration of pride. They're not displaying it towards imparting or foisting any messaging upon the students. So for example, here, the teachers are just demonstrating that students who fit within these groups know that it is safe to be in this classroom. They're not imposing any of their views. They're just demonstrating pride. No different from if you were to put a picture, let's say, of your child in your classroom, you're not imposing your view that all these kids should go and get pregnant and become parents. It's just pride in your children. So you've now moved from a sort of classroom display to a personal individual photograph. Those seem categorically different to me. Well, I don't see them as different, Your Honor. And I'll even go one step further. I mean, just to flip it, if a teacher posted a white pride flag and the school said, you can't do that because it violates our flag policy, and they only enforce it against the white pride flag, you would say, we're not under Garcetti. We're under Hazelwood Pickering. I mean, I don't know what I'm. So on the classroom display, not an individual photograph or something like that. Your Honor, in order to determine whether or not a white pride flag would violate the policy, you'd have to look at what the policies are and analyze the test under. So everything's the same except that's what's displayed. Would we be under Garcetti for that? You'd be under Tinker or Hazelwood for those. Garcetti is not going to apply in this context because the court need not determine the issue of whether or not this is free speech, which is exactly what Garcetti concerns. The threshold question of whether or not they're engaged in free speech. Garcetti was a retaliation claim. And the elements of retaliation include whether or not the speech was protected. That is not an element of any of the claims that are here on appeal. And moreover, having a flag in the classroom is also different because there are many mathematicians who come from the LGBT community who have contributed to math. And so therefore, you take a look at mathematicians Alan Turing, Florence Nightingale, Lynn Conway, Sophie Wilson, Alan Hart, all of whom contributed substantially to binary algorithms, computer science, very relevant aspects of math that are relevant to today, whether in artificial intelligence, our tablets, our phones. So it's not completely in a vacuum that it's there. And there's no evidence of any substantial interference with education, which is exactly what the governing standard is here. Your red line is on, but I want to ask you about Muldrow. Can you articulate your view as to why a change in a permission process is a change in the term or condition of employment, even under Muldrow? Your Honor, yes, because under Muldrow, change of terms and conditions is a very low bar. It doesn't require a significant change. It just means to treat worse. And by having Ms. Ecke do more than what she was otherwise required to do was treating her differently and worse than everybody else. She had never previously been directed or advised to do that. So does that mean that any change that's job-related constitutes a change in the terms and conditions of employment? Is that sort of how we should understand the terminology? Under Muldrow and Zipporah, which this court has affirmed, yes, Your Honor, because she was treated worse. It's not just any change. It's something worse. So she didn't get a benefit from it, and she wasn't treated equally. So the change imposed a burden on her that she didn't otherwise have before. Counsel, I have a question for you. On page 20 of your brief, you mentioned that the defendant, Reza Kalafar, wrote to a teacher, Rob, when he asked whether he needed to take down his sports flags. And your brief contains a quote. Hi, Rob. If the flags are not being used for education purposes, they are to be removed. That said, I highly doubt Joe Piombo would come in and ask you to remove it. And I looked at your complaint. There was no mention of that. That email was not attached. And then in the response to, in the brief on the motion to dismiss, it's in the record at A189 in the district court. Basically, the bottom line is your opponent said that your complaint doesn't allege that, and you didn't attach the email proof of that. And you still haven't. So I'm just wondering, where is that allegation? So the complaint alleges throughout that the plaintiffs were treated differently, that everybody else. I understand that, but this particular allegation, is it included in the complaint? Your Honor, no, and it doesn't matter. And I'll explain why. Because the complaint is not proof beyond the preponderance of evidence. The complaint is prima facie evidence of the facts. And the complaint clearly alleges throughout that other teachers were permitted to maintain their displays while the plaintiffs didn't. And that fact must be accepted as true when it's 12B6 standard. Mere fact that there was additional evidence that came to light doesn't mean that I was required to put it in the pleadings. If we were talking about summary judgment, that might be a more relevant argument. But here in the 12B6, we have the allegations that other teachers were permitted to keep their displays and the plaintiffs were not. And that is sufficient to meet the threshold. So it's irrelevant that this was not included as part of the pleadings. Well, I'm curious, because they basically allege that you didn't have proof of that, and yet it's in your brief here, so I was just. We have the email, but it was not part of the briefing. But we have it. I didn't make that up. And I don't think that they're going to deny that that evidence exists, because it's their district-wide email. So they have it, it exists, it's not going to be disputed or it shouldn't be. Thank you, Counselor. You've reserved a couple of minutes for rebuttal. May it please the Court. My name is Brian Sokoloff, and I represent the appellees. This case involves the forced continual viewing of a teacher's personal political views by a captive audience of special education math students. It's very clear that the plaintiffs don't have a First Amendment right to decorate their classroom walls with personal political symbols. Can I ask, I gather the teacher was the head of the Gay Student Alliance. Would the policy prevent the putting up of the flag in the room for purposes of the Gay Student Alliance meeting? Absolutely not. That would be permitted. Permitted. It may not be in the record, but she was told that and she rejected it. She wanted the flags, both flags, to be up all day long during math class. And it's important. Nobody's telling her. The policy on its face would distinguish between having it up all of the time and having it up just for the meetings? Or you're saying it's within the discretion of the school as to the application? The policy relates to you can't bring your politics into the classroom during instruction. The policy of no political symbols or political views doesn't apply to clubs. And for a good reason. If a student doesn't like what's on the wall for a club, the student can get up and not go back to that club. But a student that's sitting in a math class that has, and I don't know whether you've seen, it's in the record, how big these flags are. They're not little flags. They covered walls. Let's take that as an example then. If on the teacher's desk they had just a small little individual pride flag, would the policy prevent that? So it stays there all the time throughout math class, but it's just on their desk. No, the policy wouldn't permit that, because it's a political symbol. Could you prohibit that under the First Amendment? I think so. I think so, because under Hazelwood, it would bear the imprimatur, what's on a teacher's desk, what's on the walls, bear the imprimatur of speech by the school. And so then if the teacher has a picture of her and her spouse on her desk, could you prohibit that under the First Amendment on the theory that there's objection, some people hold objections to same-sex marriage? I would say that a picture of a teacher with a spouse doesn't have the same connotation. It's not a political message. It's a personal message, and it wouldn't reasonably be seen as having the imprimatur of the school. Why wouldn't that be true for a small flag on the teacher's desk? And what's the analysis that we do to draw the lines that you're struggling to draw? Well, it is a line, and it's a hazy line. And the fact that I'm struggling, and the court and counsel are arguing, you're not arguing with her, but questioning what is the right standard here, shows that this is really a textbook case of qualified immunity. Well, before we get to qualified immunity, if we could stay on this line of questioning, what if the picture of the teacher and her spouse were in a frame that had the pride flag, or the pride progress flag, you know, the edge of the frame? Would that be a problem? It wouldn't be a problem for me, but if I'm Well, I'm not asking about you. Would that be allowed under the policy? Well, that would be for an administrator to judge whether that is bringing politics into the classroom. What about the teacher wearing a pin with the pride progress flag? I think personal jewelry really shouldn't be seen as bearing the imprimatur. Well, see, this is what's troubling me now, because in your brief, you say, well, somebody wearing a pendant, or a cross, or whatever, that's different. That's on their person. But now in answering my question, you say it shouldn't. That suggests that maybe you think the policy would prevent that. No, I don't think the policy would prevent that. And if I gave that impression, I didn't mean to. It sounded like to me you had some hesitation on whether the policy would allow a teacher to wear a pendant or a pin on their clothing. No, I was thinking. I wasn't hesitating. What I'm really What about the parking lot? The parking lot, there's some claim, allegation that some political messages were painted on the parking lot of the school. How is that different? That's student speech. These are student parking spaces. So could this teacher paint the pride flag in her parking spot? Well, she's not a student. She didn't pay for the spot. But assuming she did, yes. She could put a pride flag on the bumper of her car. She could do it outside the classroom. But to have it on the wall, this is very narrow. It's having it on the wall of a classroom, not related at all to the math curriculum, at all. And I need to point out, two of the plaintiffs didn't have flags, didn't want flags. There's no indication that they have any connection to these flags. They shouldn't even be plaintiffs. But we will deal with the issue. In terms of Muldrow, the court below decided the case before Muldrow, but Muldrow doesn't affect the analysis. Taking down something off of a wall that's not even related to curriculum affects her job not at all. It's not a transfer. It's nothing. It's just she can't proselytize politically unrelated to the curriculum. And so the court got it right that there was no adverse employment action. Can I ask about Monell? So the district court said, I'm getting rid of Monell because there's no underlying constitutional violation. But the district court didn't really do a constitutional analysis on the First Amendment claim. The district court did qualified immunity. That's not right, is it? You have to do, in order to get rid of, to dismiss the Monell claim, don't you have to do a constitutional analysis of the First Amendment claim? Only if the alleged constitutional violation was caused by a policymaker. Right, but there are allegations as to the board's involvement. And I don't know how you would get out of saying that board members are not final decision makers. I don't know where there's allegations that the board as a whole, which is the policymaker, made any decisions here. That's not in the record. If there are such allegations, then would you agree that district court, that you need to do either here or at the district court constitutional analysis? You can't just rely on qualified immunity for purposes of law.  I agree with that. And I'm going to ask, so you're not, well, you're not really arguing for Garcetti to apply. Why not? I'm happy for the court to apply Garcetti, but it seems like Hazelwood is the most appropriate. If she's arguing that it was part of my job to teach kids to be tolerant, and this is my way in math class of teaching kids to be tolerant, and that's my job, then yes, Garcetti applies, which means that her speech, the flag, uttered as part of her job is not protected by the First Amendment. You're saying the speaker's purpose determines, the speaker's sort of subjective purpose determines what it is? No, it's an objective analysis of what her job is and whether she's speaking pursuant to her job duties. That's Garcetti. And if she's arguing it's part of my job duties because the state of New York told me I have to do this, that's my job, well, then they're out of court on Garcetti. But if she's not arguing that, they're still out of court under Hazelwood because the wall of a classroom can legitimately, reasonably be seen as speech by the school district. Unless the court has any other questions, I'll rest on my brief. Thank you. Thank you, counsel. Ms. Berger, you're reserved two minutes for rebuttal. Thank you. Just a couple of points. The fact that defense counsel is unable to articulate what is permitted and what is not is demonstrative of the arbitrary and therefore unconstitutional nature of the policy. The word political is not defined. And without a definition, that leads to the sole discretion of the school to determine what constitutes political and what doesn't. That means it's arbitrary on its face and therefore unconstitutional. Secondly, it's not a valid time, place, manner restriction to have the teachers put up and down the stickers. You can't remove stickers and reapply them. You can't have them take the flag down and put it up every time the GSA meets. That policy is not content neutral. It's directed specifically towards the flag. And where it is not content neutral, it has to be narrowly tailored and strictly construed. We don't have the school meeting its burden as to justify that time, place, manner restriction. And furthermore, in arguing that it's a valid time, place, manner restriction, the school would effectively be conceding that it constitutes free speech. But I want to be very clear, and I'm only saying that because the issue was raised before about Garcetti. We are not arguing that the display is school sponsored. We are not saying that the teachers were there to put it up pursuant to the New York Department of Education. The Department of Education simply says that these symbols are not political. It says that the school shouldn't take them down out of fear of it being viewed political. The school shouldn't take it down because they have a disagreement over the views of the LGBT community. That's where the Education Department comes into play. So the argument that this arose out of a pedagogical concern has 0.0 merit. It has no merit under the Education Department policies. It has no merit because these flags existed for more than five years without any trouble from anybody. And moreover, the basis for taking them down was totally pretextual. So to the extent that there are any emails by the school claiming the reasons why those flags were taken down, again, that would be an issue of fact to be determined on discovery through all the evidence. But on a 12b6 motion, the allegations in the complaint need to be construed as true. And the complaint is fraught with contentions that the school's justifications were all over the place, unable to be pinned down, arbitrary, designed specifically to target and suppress this specific speech, and were entirely pretextual. And I just want to caution the Court. To the extent that there are photographs that were submitted by the defendants regarding the size of the flag or the parking lot or anything outside of the pleadings, those are impermissible on the 12b6. The defenses in terms of what was enforced and what wasn't, explanations by the defendants go to the defendants. These are all extra pleading contentions put in an attorney's memorandum of law. On a 12b6, those allegations and contentions are not to be considered on a 12b6 motion because they're outside the pleadings, and they don't satisfy the requirements for the Court to take judicial notice of those issues. And then with respect to the policymakers, you have the board and the superintendent who collectively implemented and created these policies specifically to suppress the plaintiff's speeches. So Monell is absolutely in play. And I agree, Your Honor, that the analysis should have been conducted by the Court alone. What allegation goes to the board as a whole as opposed to individual members? You're saying because it's the head of the board. The board passed a resolution. There was a board meeting that was held. There was actually a huge protest in response to that board meeting, which demonstrates the public nature of the flags. And then following that meeting, the board enacted the policy. I thought the policy existed already and that, correct me if I'm wrong, I thought the policy existed, but that the emails or the edict to remove the flags came from the superintendent and then enforced by the principal. I didn't see the board actually issuing that decision. So in paragraph, so the initial email went out. Then the board convened on that policy. Where is that in the complaint? In the complaint, it starts on paragraph 77. It's A30 of the record. When you say that policy, what policy are you referring to? The flag removal policy. And it wasn't. Not the general policy about no political statements, because there's a difference, right? So policy 1310 was already part of the policy, the scores policy. Subsequently, the board convened and addressed the flag removal policy that Linda Adams, the superintendent, had previously put into place by email. All right, but I guess what I'm asking, because I think it matters under Port Washington Teachers Association versus the Board of Education of Port Washington. In 2007, this court held that New York education law only grants power to establish policies to the Board of Education, not to the superintendent. So I'm trying to understand where in the complaint you allege that the policy of no flags, I don't mean the general policy from which the no flag order instruction was issued. But the no flag policy was a board decision? And where is that in your complaint? And when was that decision made? Your Honor, I would know when that decision was made during the course of discovery. And we would get that. But as of right now, I don't have it. OK, and where in your complaint did you allege it was a board? Sorry, just understand. Do you allege it was a board decision? It was initially a decision that was made by the superintendent and the school principal that was ratified by the board thereafter. And what allegation goes to the ratification? I don't. I don't have it, Your Honor. You don't know it, or it's not in there when you say you don't have it? Like, you don't know the paragraph? I don't know off the top of my head, Your Honor. That's the answer. But you believe there's an allegation that goes to board ratification beyond paragraph 77, which says the board held a meeting where an independent flags removal policy was addressed? Well, Your Honor, if it wasn't a school policy, then the flags would be allowed to be permitted in the school. So, yeah. I'm asking what allegations. You just said the board ratified it. And I'm asking, is there something other than paragraph 77 that goes to the ratification point? That and the fact that the plaintiffs are still prohibited from maintaining their flags and stickers under school policy. So unless the superintendent is acting out of turn, and I don't think that's what the defendant's arguing. I mean, if she was acting out of turn, then she would have a different, then her defenses would not be aligned with everybody else's defenses. Couldn't the board have said, we'll leave it up to the individual superintendents or principals? In other words, just the factual point that you made that the board ratified the flag policy. Is there anything other than paragraph 77? So you're pointing to paragraph 77 and the fact that it remains the policy. That's correct, Your Honor. That's correct. If there is a specific policy number designated to it by the board, I don't have it. I know that the board had convened on it. I know that that policy remains in place. The board meeting was public? They're public and there are minutes as to the meeting that you have access to? Yes, Your Honor. But you don't have allegations as to what the board did other than addressed it? Yes, because at the time of the complaint, we did not have that information. Thank you, counsel. Thank you for the clarification.